[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT
This case arose out of a motor vehicle accident. Liability was contested; the defendant argued that, the plaintiff had not established her negligence theory of liability. The court, at the defendant's request also charged the jury on the defenses of contributory and comparative negligence. The plaintiff took no exceptions to the charge. The defendant took exception as to several matters not germane to the present motion and took exception to the court's cautionary instruction relative to one of defense counsel's arguments in his summation which is involved in this motion.
At trial, as noted, liability was contested but also the defense contested the issue of damages — whether and how much the plaintiff would be entitled to recover even if she prevailed on her theory of liability. CT Page 9276
In the charge, the court instructed the jury that: "The plaintiff has the burden of proving every essential element of her case by a preponderance of the evidence." The court then instructed the jury on the plaintiff's theory of liability. The court then instructed the jury on causation; the court said: "If a plaintiff proves her theory of liability, that would still not entitle the plaintiff to recover damages. The plaintiff must still prove by a preponderance of the evidence causation, that the negligent conduct of the defendant caused her damages." At the end of the causation charge, the court said before discussing the defenses of contributory and comparative negligence:
 "Now if the plaintiff has proven her theory of liability to you and that her injuries and damages were caused by the defendant, you may not go on to consider damages, which is the final portion of my charge, without first considering certain defenses that have been raised by the defendant."
At the conclusion of the charge on defenses, the court finally charged the jury on damages. Before going into specifics, the court generally said: "The fact that I'm instructing you on damages does not mean that I have concluded that the plaintiff has proven her theory of liability or causation; that's not my job . . . I'm giving you these instructions on damages because it's my responsibility to give you a full and complete charge on the law."
After the main portion of the charge, the court discussed the verdict forms. As to the plaintiff's verdict form, the court displayed it to the jury and said if you return a plaintiff's verdict "you determine the full damages that the plaintiff is entitled to according to my instructions." The court then explained a line on that form through which the jury could inform the court of its decision on the defense of comparative negligence. The court then showed the jury the defendant's verdict form and excused the jury to begin deliberations. Neither side submitted interrogatories to the jury and the court did not. The jury returned a verdict in favor of the defendant.
The plaintiff has now moved to set aside the verdict because of what she claims were prejudicial remarks made by defense counsel during closing argument. The closing arguments were not recorded by agreement of counsel.
As to one doctor, the plaintiff submitted a written report pursuant to § 52-174 (b) which specifically authorizes such procedure and states that the use of such a report in lieu of the doctor's testimony "shall CT Page 9277 not give rise to any adverse inference concerning the testimony of such" doctor. This statute has been in effect since 1977, the language concerning no adverse interest has been in effect since 1989 when it was added to subsection (b).
In closing argument, defense counsel alluded to the fact that the doctor whose report was introduced had not been brought in to testify by the plaintiff. Objection was made during argument; the court read the statute and admonished the jury that no adverse inference could be drawn from the failure to call the doctor. In the charge, the court again referred to the statute, to the fact that no adverse inference could be drawn from failure to call the doctor and told the jury that lawyers rely on that statute in the preparation of their cases so fairness required that they, the jury, obey the statute's admonitions.
Thereafter, defense counsel alluded to the fact that the plaintiff's husband was in the military, was assigned to Hawaii, that the plaintiff went with him. The lawyer for the defendant then argued that for all the months the plaintiff was in Hawaii, she never availed herself of any medical treatment; also, the inference was clearly raised that because of her husband's military status there would have been coverage for such treatment.[1] Plaintiff's counsel strenuously objected, he stated, as was the case, that there had been no evidence presented that such treatment would have been covered, and, in fact, such treatment would not have been covered under the husband's Army insurance. Plaintiff's counsel represented that defense counsel knew the latter was the case. The court at the time the argument was made and in the charge told the jury that there was no evidence the plaintiff had access to medical coverage while her husband was stationed in Hawaii and that "the jury should not consider any comments regarding this matter for any purpose in this trial." Defense counsel took exception to this portion of the charge; as noted, the plaintiff took no exceptions to the charge.
Our Supreme Court has often held that the decision to set aside a verdict lies within the discretionary power of the court and the court's decision will not be disturbed unless there has been a clear abuse of the trial court's discretion. Lee v. Lee, 171 Conn. 1, 3 (1976); Jacobs v.Goodspeed, 180 Conn. 415, 416 (1980); Biegel v. Heintz, 163 Conn. 23, 27
(1972). In Yeske v. Avon Old Farms School, Inc., 1 Conn. App. 195, 205
(1984), the court said: "A verdict should be set aside if there has been manifest injury to a litigant, and it is singularly the trial court's function to assess when such injury has been done since it is only that court which can appraise the atmosphere prevailing in the courtroom." Also see Pisel v. Stamford Hospital, 180 Conn. 314, 322 (1980).
Generally, however, it has been said that the trial judge's right to CT Page 9278 set aside a verdict is not "unfettered." For example, in Camp v. Booth,160 Conn. 10, 13 (1970), the court said:
 "The right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded [people] passed upon by the jury and not by the court."
Although this of course is an important consideration, query how central it is when the basis of the motion to set aside rests on a claim that prejudicial remarks in the closing argument in effect prevented a fair resolution of facts by the jury. In other words, prejudicial argument can vitiate the whole fact finding process by the jury and when such is the case, it ill behooves the party making those remarks to point to the constitutional right to have a jury find the facts when that party's words arguably interfered with the very ability of the jury to find the facts in a fair way.
It is certainly true that mere rhetorical exaggeration cannot be said to so exceed the limits of proper argument so as to require that a verdict be set aside. Riordan v. Gouin, 119 Conn. 235, 241 (1934). What really causes concern is when counsel refers to facts not in evidence or that should not be in evidence during closing argument. As the court said in State v. Santello, 120 Conn. 486, 490 (1935):
 "A well-established rule is that a statement by counsel, not under oath, of a material fact pertinent to the issues unsupported by evidence, and prejudicial to the opposing party, constitutes reversible error unless it appears that the prejudicial effect has been effectively averted by instruction to disregard the statement or otherwise . . . It must, of course, be an unsworn assertion on counsel's own authority of the existence of the fact as distinguished from an appeal to the jury's recollection of the evidence or inferences claimed therefrom.
Another court has said: "When it is probable that a verdict has been influenced by the improper remarks of counsel, it should be promptly set aside. It may be apparent from the nature of the remarks themselves that they have influenced the verdict." Worden v. Gore-Meenan Co., 83 Conn. 642, CT Page 9279 652-653 (1910). See generally, Conn. Civil Procedure, Stephenson, Vol. II, 2d Ed., § 205(g), p. 843.
On the other hand, where prejudicial remarks have been made and curative instructions have been given, it may not be appropriate to set aside the verdict. The cases are described as "exceptional" where curative instructions will not suffice to cure the prejudice. Yeske v.Avon Old Farms School, Inc., 1 Conn. App. 195, 204 (1984). As said inSantello, on the utility of curative instructions: "In many cases appropriately pointed directions to the jury to disregard the statement may operate to so withdraw it from their consideration as to obviate prejudicial effect. In others, the injurious effect is such that it cannot be neutralized by instructions to disregard," 120 Conn. at p. 491. The question is then whether the court can assure itself, and live comfortably with a decision, that any curative instructions removed the effect of the prejudicial remains on the deliberations of the jury.
There is no talisman to decide this question. The decision really rests on the nature of the trial and the context in which the objectionable remarks were made. In this case, the remarks in closing argument about failure to call the doctor and reference to the fact that the plaintiff did not go for treatment in Hawaii where her husband was stationed and where she could have received treatment under his Army medical coverage were immediately objected to, counsel stated his reasons for the objection and the court gave curative instructions. The court then gave further curative instructions in its charge to the jury which immediately followed the closing argument.
On the other hand, this was not a lengthy trial, it was rather a simple allegation of injuries arising out of a motor vehicle accident. The whole case turned on the testimony and thus believability of the plaintiff and the defendant as to liability and in large measure on the plaintiff's testimony as to the existence of and therefore extent of any damages. The plaintiff claimed permanent disability with injuries affecting her to the time of trial and for the rest of her life. The court gave an instruction on permanent disability, that claim was a known factor in the case, and the court conducted a charging conference in which it reviewed its prospective charge. The objectionable remarks were made not in the opening statement but in closing argument, cf. Worden at 83 Conn. at p. 653
— the most dramatic part of the trial after evidence is closed and after the offended party can respond through evidence or measured argument to the unfair comment and its implications. The plaintiff was with her husband in Hawaii for over a year, she was claiming a permanent injury and she did not go for treatment. The suggestion, not based on any evidence, was that if she had any problem, she could have gotten cost free treatment, she did not and, therefore, she had no problem and her CT Page 9280 testimony about having an ongoing problem was bogus. It is a pretty pale response in light of all that to have some judge tell you, if you are on the jury, — well, ignore all that, there's no evidence introduced at this trial about her being able to get covered treatment so you are not to consider the comment in deciding whether and to what extent the plaintiff was injured. This remark about treatment in Hawaii, of course, was coupled with an earlier reference in closing argument to the fact that the plaintiff's doctor was not called to testify. The comment was in direct violation of the explicit provisions of § 52-174 (b) and, in effect, told the jury, well, this is a pretty flimsy case if they don't even bring in the doctor — to the jury what else can the comment be construed as meaning? Standing alone, the latter remark when addressed by curative instructions at the time made and in the charge might not warrant setting aside the verdict. But if both remarks are considered together from the jury's perspective they said to the jury not to think much of this damage claim and as importantly not to attach much credibility to the plaintiff's testimony about her injury and whether and to what extent she had any injury. But credibility of the plaintiff on damages and how she said the accident occurred was all this two or three-day trial was about. The remarks coming in closing argument could not be responded to in an evidentiary context — the plaintiff could not explain through her own testimony or that of her husband that his Army coverage would not provide chiropractic care for the plaintiff, could not reflect on what the salary of young military personnel happens to be and how much it leaves young couples to deal with medical problems and emergencies. It was not fair comment, the court cannot rest easy with allowing this verdict to stand because it cannot conclude that it was not probable that the verdict was influenced by these remarks despite curative instructions. This was, after all, a lay jury and we as lawyers and courts must weigh these things from the perspective of how people react in the real world to what is said and done by us, not by referring to mantras comfortably relied upon to decide there was no prejudice when in fact, there was. The court concludes fairness requires that the verdict be set aside.
Does anything in the case law prevent this result? The defendant suggests that there were no interrogatories submitted and there was a "general verdict" in favor of the defendant. The defendant in its brief argues: "The jury in this case, in returning a verdict for the defendant, must necessarily have found that there was no liability in the part of the defendant or that the comparative negligence of the plaintiff exceeded 50%" (ergo) . . . "there was no occasion presented for the jury to include in their deliberations any consideration of whether or not Dr. Edgar testified as to the plaintiff's injuries or whether or not the plaintiff could have availed herself of medical facilities provided by the Army." This is not necessarily so — the jury could have decided to CT Page 9281 return a defendant's verdict because they concluded that the plaintiff had not proven causation as to any of her damages. In the beginning of this opinion, the court referred at length to its charge on causation, its preliminary remarks before the instruction on damages and as to its general remarks at the end of the charge on the verdict forms. All of this leads the court to conclude that the jury could well have decided to bring in a defendant's verdict based on a finding of no causation. In fact, given the particular issue now before it, the court is concerned about its standard charge and the way it strings together theory of liability — causation — the defenses, then damages. When a defendant's verdict form is returned how is one to know whether it is returned because the theory of liability is not proven or causation has not been shown or the plaintiff is found over 50% responsible for the accident. Why should the plaintiff suffer if the court's instructions on this point were not explicit? The defendant says no interrogatories were submitted by the plaintiff so that the issue could be resolved. But the remarks were made in closing argument, moments before the charge. Besides the effect of a general verdict and the use of interrogatories, is surrounded in great common law mystery. Why should not the defendant have submitted interrogatories to make sure the inappropriate remarks made in closing argument did not affect the verdict? The failure to submit interrogatories and the arguably resulting consequences of a general verdict should not be used as a sword by the party who may have made their use a prerequisite for determining the possible effect of that party's own prejudicial remarks on closing argument.
The defendant analogizes its argument to statements made in cases likeLevin v. Ritson, 170 Conn. 223, 225 (1979), which says that ordinarily a plaintiff's claim that the court gave an erroneous charge on damages would not be considered where a general verdict on liability was in the defendant's favor. The jury never reached the issue of damages. Levin
cited Hummelstein v. General Elec. Co., 144 Conn. 433, 435 (1957) and Maltbie, Conn. App. Proc., § 95. The court read Maltbie and the cases cited by him, Ingraham v. Marotta, 138 Conn. 36 (1951); Cornwell v.Rosoff, 137 Conn. 458 (1951); LeCount v. Farrand, 118 Conn. 210 (1934);DeLucia v. Polio, 107 Conn. 437 (1928); Sullivan v. Clear, 101 Conn. 603
(1924). In their review of the facts, Ingraham and Marotta assume the plaintiff was injured as a result of the accident. LeCount and DeLucia
were death cases where death was caused by the accident. Sullivan was not a negligence case, but involved the conveyance of real estate. Ingraham,Marotta, LeCount and DeLucia were cases in favor of the defendant but any issue of causation of claimed injuries does not appear to have been a factor in the court's discussion or decision or general pronouncement that an error in the charge on damages is not to be considered if there is a verdict on liability in favor of the defendant. CT Page 9282
In any event, even if the above analysis is incorrect, the court also has concluded that the comments made as to lack of treatment in Hawaii in effect were an inappropriate attack on the plaintiff's general credibility since they went to her claim at trial of permanent injury. Clearly, the plaintiff's credibility was at issue on the question of liability. The court does not believe its curative instructions removed the effect of unfair prejudice caused as to the issue of credibility.
The motion to set aside the verdict is granted.
Corradino, J.